UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
(Eastern Division)

| | |
|---|---|
| COMMONWEALTH CARE ALLIANCE, HEALTH CARE FOR ALL, GLENN CRENSHAW, AND PAULA CRENSHAW, individually and on behalf of persons similarly situated, <br><br> Plaintiffs <br><br> v. <br><br> ASTRAZENECA PHARMACEUTICALS L.P., ASTRAZENECA PLC, ASTRAZENECA US, ZENECA, INC., AND ZENECA HOLDINGS, INC., <br><br> Defendants. | No. 05 CV 10-335-DPW |

**MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFFS' MOTION TO REMAND**

Pursuant to 28 U.S.C. § 1447(c), Plaintiffs respectfully submit this Memorandum of Law in support of their Motion to Remand this case to the Superior Court of the Commonwealth of Massachusetts (Suffolk). For the reasons stated herein, this case should be remanded to the Superior Court, where it was originally filed, because this Court lacks diversity jurisdiction.

**I.      SUMMARY OF ARGUMENT**

As alleged in their Complaint filed in State Court, Plaintiffs are residents of Massachusetts who purchased Nexium. Had they known the truth about Nexium, however, they would not have purchased the drug and/or would certainly not have paid its substantially inflated price. Accordingly, Plaintiffs pursue this class action on behalf of themselves and all other

similarly situated consumers for Defendants' violations of Mass. Gen. Laws. ch. 93A, *et seq*. and state common law.

Professing that Plaintiffs seek more than $75,000 in relief, Defendant improvidently removed the action to this Court. Plaintiffs' consumer claims, however, fall far short of the $75,000 threshold and their state claims cannot be aggregated with the claims of other consumers to meet the requisite amount in controversy for removal to federal court based on diversity. Because this Court does not have subject matter jurisdiction, it should remand State Court.

## II. NATURE OF THE CASE

### A. The Allegations of Plaintiffs' State Court Complaint

As alleged in the Complaint, Defendant was the holder of a patent for Prilosec, the world's most prescribed drug in the year 2000. Faced with the expiration of its patent for Prilosec, Defendant engaged in a multi-prong attack to prevent market loss upon entry of a generic Prilosec. First, it attacked generic manufacturers in court seeking to delay entry of generic competition. Second, shortly before the patent on Prilosec was set to expire, the company got FDA approval for the newly patented Nexium. It then launched a massive advertising campaign to persuade Prilosec users and their doctors that Nexium was a better drug for the treatment of heartburn when in fact they are nearly identical drugs at radically different prices (Prilosec now sells over the counter for $0.46 per pill and Nexium sells at over $4.00 per pill).

Defendants' campaign was very effective and as a result of Defendants actions, Nexium began to replace Prilosec virtually overnight. While the sales of Prilosec fell sharply in response to generic competition, sales of Nexium sky rocketed to reach $3.3 billion by 2003. Defendants' campaign has resulted in billions of dollars of unnecessary drug expenditures in this country.

This action was originally commenced on January 25, 2005 in the Superior Court of the Commonwealth of Massachusetts (Suffolk). The Plaintiffs' Complaint seeks restitution and equitable relief on behalf of the Plaintiffs and a proposed statewide class of consumers arising out of Defendants' advertising and promotion of Nexium. The Plaintiffs' Complaint asserts claims for practices and acts that are unfair, deceptive and unlawful in violation of Mass. Gen. Laws ch. 93A *et seq.* The Plaintiffs' claims arise out of and are based solely on state law. The Plaintiffs' Complaint does not rely on nor cite any Federal statute, law or regulation.

### B. Defendants Improper Removal of the State Court Action

The Defendants filed a Notice of Removal to this Court on February 18, 2005. The Defendants' Notice of Removal cites as its grounds for removal jurisdiction the alleged existence of diversity jurisdiction and supplemental jurisdiction pursuant to 28 U.S.C. §§ 1332 and 1367. In support of removal, Defendant asserts that the parties are diverse and that the amount in controversy exceeds $75,000. Notice of Removal at ¶¶ 4-8. However, as set forth below, the value of Plaintiffs' claims falls far short of the $75,000 threshold. In addition, Plaintiffs' state claims cannot be aggregated with the claims of other class members to meet the requisite amount in controversy for removal to federal court based on diversity. Defendant's removal was careless and, accordingly, the case should be remanded.

## III. ARGUMENT

### A. The Defendant's Notice Of Removal Is Procedurally Defective Because It Fails To Establish A Colorable Claim Of Federal Jurisdiction.

The Defendants' Notice of Removal contains only conclusory allegations that the matter in controversy exceeds the sum or value of $75,000. No facts are alleged to support this assertion.

In *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178 (1936), the Supreme Court stated:

> The prerequisites to the exercise of jurisdiction are specifically defined and the plain import of the statute is that the District Court is vested with authority to inquire at any time whether these conditions have been met. They are conditions which must be met by the party who seeks the exercise of jurisdiction in his favor. He must allege in his pleading the facts essential to show jurisdiction. If he fails to make the necessary allegations he has no standing. ... The authority which the statute vests in the court to enforce the limitations of its jurisdiction precludes the idea that jurisdiction may be maintained by mere averment or that the party asserting jurisdiction may be relieved of his burden by any formal procedure.

298 U.S. at 189. *See also Willingham v. Morgan*, 395 U.S. 402, 408 (1969)(documents supporting removal "should be candid, specific and positive"); 28 U.S.C. § 1446(a) (notice of removal must provide a "short and plain statement of the grounds for removal").

The First Circuit has held that a removing defendant is required to "make a 'colorable' showing that a basis for federal jurisdiction exists." *Danca v. Private Health Care Systems, Inc.*, 185 F.3d 1, 4 (1st Cir. 1999); *see also BIW Deceived v. Local S6, Industrial Union of Marine and Shipbuilding Workers of America, IAMAW District Lodge 4*, 132 F.3d 824, 831 (1st Cir. 1997); *Anderson v. Chamberlain*, 134 F.Supp.2d 156, 160 (D. Mass. 2001). The Notice of Removal fails to allege any facts to support the assertion that the amount in controversy in this case satisfies the statutory minimum requirement. *See Williams v. Best Buy Co., Inc.*, 269 F.3d 1316, 1319-20 (11th Cir. 2001)("A conclusory allegation in the notice of removal that the jurisdictional amount is satisfied, without setting forth the underlying facts supporting such an assertion, is insufficient to meet the defendant's burden."); *Allen v. R&H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir. 1995) ("Removal, however, cannot be based simply upon conclusory allegations."). *See also Laughlin v. Kmart Corp.*, 50 F.3d 871, 873 (10th Cir.), *cert. denied*, 516

U.S. 863 (1995)("The burden is on the party requesting removal to set forth, **in the notice of removal itself**, the underlying facts supporting [the] assertion that the amount in controversy exceeds'" the statutory minimum)(emphasis added).

The patent insufficiency of the Defendant's Notice of Removal makes it impossible for this Court to discern whether it has diversity jurisdiction over this action. As this Court has recognized on numerous occasions, the exercise of federal jurisdiction, particularly on removal, is not something to be undertaken lightly. *See Brae Asset Fund, L.P. v. Dion,* 929 F.Supp 29, 31 (D. Mass 1996)("The federal courts are courts of limited jurisdiction. Both Congress and the federal courts have been cautious about expanding those limitation."). Indeed, the First Circuit has observed that federal courts "have a responsibility to police the border of federal jurisdiction." *Spielman v. Genzyme Corp.,* 251 F.3d 1, 4 (1st Cir. 2001).

The Defendant's Notice of Removal in the present case is vague, conclusory, generic and wholly devoid of any facts supporting the exercise of this Court's diversity jurisdiction. This Court would rightfully not tolerate these deficiencies in a complaint and should similarly be intolerant of such deficiencies in a notice of removal. As a consequence, the Defendant's Notice of Removal is procedurally defective and deficient and the Plaintiffs' Motion to Remand should be granted.

    **B.    This Court Lacks Subject Matter Jurisdiction Because The Amount In Controversy Does Not Exceed $75,000**

Defendant asserts that this Court has diversity jurisdiction over this case because the parties are completely diverse and the amount in controversy exceeds $75,000. Notice of Removal at ¶¶ 4, 6-7. Contrary to Defendant's statements, and as shown below, the amount-in-controversy actually falls far short of the $75,000 threshold. As a result, this Court must remand the case to the Superior Court. 28 U.S.C. § 1447(c).

### 1. The Relief Sought By Plaintiffs Does Not Exceed $75,000

Plaintiffs and class members seek damages and/or disgorgement arising out of Defendant's sale and promotion of Nexium pursuant to practices and acts that were unfair, deceptive and unlawful in violation of the Massachusetts General Laws Chapter 93A. Defendants assert that "the value of the requested relief exceeds $75,000." Notice of Removal ¶ 6. Further Defendants claim that the value of Plaintiff CCA's requested relief exceeds $75,000. Notice of Removal ¶ 7. Although the total damages to the Plaintiffs and class members are potentially in the millions of dollars, the damages suffered by each individual plaintiff in no case exceeds $75,000.

As set forth in the Complaint, Nexium sells for approximately $4.00 per pill while Prilosec sells for approximately $0.46 per pill. Thus, for a consumer who took one Nexium pill every day during the proposed four-year class period, the cost of Nexium would amount to $5,840.[1] Alternatively, any disgorgement theory as a means for damages would require Defendant to disgorge its ill-gotten profits from the sale of Nexium to Massachusetts consumers. According to the complaint, sales for Nexium were $456 million, $1.53 billion, $2.48 billion and $1.28 billion for 2001, 2002, 2003 and 2004 respectively (a total of $5.75 billion over the proposed four-year class period). Plaintiffs alleged in the Complaint that tens or hundreds of thousands of individuals and entities throughout Massachusetts purchased the drug during the class period. Complaint ¶ 57. Thus, assuming Defendant was required to disgorge all sales for a four year period for the sake of argument ($5.75 billion) divided by the number of Massachusetts consumers (assuming 100,000), the maximum amount recoverable for disgorgement of ill-gotten profits would be approximately $57,500.

---

[1] ($4.00/pill)(1/day)(365 days)(4 years) = $5,840.

Of course the amount recoverable for Massachusetts consumers would actually be much lower. The $57,500 figure is based on Defendants' nationwide sales of Nexium. First, disgorgements would more likely be tied to the portion of sales revenue that resulted from excessive prices. Massachusetts consumers' disgorgement claims would be based solely on the amount of ill-gotten gains derived by Defendant on sales to Massachusetts consumers. Discovery into this issue will allow Plaintiffs to determine the actual number of sales of Nexium to Massachusetts class members and, in turn, the amount of ill-gotten sales realized by Defendant. For purposes of this motion, and as pled in the Complaint, the class consists of tens or hundreds of thousands of persons and entities in Massachusetts that have purchased Nexium in the preceding four years. Complaint ¶ 56.

Defendants claim that the value of Plaintiff CCA's requested relief exceeds $75,000. Notice of Removal ¶ 7. Nevertheless, Plaintiff CCA's claims fall far short of the requirement. Plaintiff CCA only purchased $1,608.71 worth of Nexium during the class period. This figure, under no circumstance, is sufficient to satisfy the amount in controversy required to establish diversity jurisdiction. Even if this Court could establish jurisdiction over one Plaintiff – CCA - Defendants' reliance on *Del Rosario Ortega v. Star-Kist Foods, Inc.*, 370 F.3d 124 (1st Cir. June 2, 2004) to support the proposition that this court can exercise supplemental jurisdiction over other Plaintiffs is misguided. Ortega specifically declined to address the issue of supplemental jurisdiction in cases involving the claims of absent class members in diversity-only class actions. While the First Circuit is silent on the issue, other Circuits are split.

The 4th, 9th and 11th Circuits hold that § 1367 authorizes jurisdiction over all class member if the named plaintiffs satisfy the amount-in-controversy requirement. *See Rosmer v. Pfizer, Inc.*, 263 F.3d 110, 114 (4th Cir. 2001); *Gibson v. Chrysler Corp.*, 261 F.3d 927, 934 (9th

Cir. 2001); *Allapattah Servs., Inc. v. Exxon Corp.*, 333 F.3d 1248, 1254 (11th Cir. 2003). The 8th and 10th, hold that § 1367 does not authorize jurisdiction over class member who do not independently meet the amount in controversy requirement. *See* Trimble *v. Asarco, Inc.*, 232 F.3d 946, 962 (8th Cir. 2000); *Leonhardt v. W. Sugar Co.*, 160 F.3d 631, 640 (10th Cir. 1998). No Circuit allows a court to exercise jurisdiction over absent class members where it does not have jurisdiction over the named plaintiffs. It is evident that none of the named plaintiffs meet the amount in controversy required for this Court to establish diversity jurisdiction. Since this Court cannot exercise jurisdiction over the named plaintiffs it surely cannot exercise supplemental jurisdiction over absent class members.

### 2. Plaintiffs' State Claims Cannot Be Aggregated With Other Class Members' Claims To Meet The Requisite Amount In Controversy.

Defendant's contention that the value of the relief sought by plaintiffs, "treble damages, restitution and/or disgorgement of all unlawful or illegal profits received by Defendants, injunctive relief and attorneys' fees" exceed $75,000 lacks merit. Notice of Removal ¶ 6. The Supreme Court in *Snyder v. Harris*, held that class action plaintiffs cannot aggregate the amount of their "separate and distinct" claims to meet the amount-in-controversy requirement. 394 U.S. 332, 336 (1969). Defendant's assertions that these claims can be aggregated would be a complete end-run around the principals enunciated in *Snyder*.

## IV. CONCLUSION

For the reasons set forth above, Plaintiffs' Motion to Remand should be granted and this case should be remanded to the Superior Court of the Commonwealth of Massachusetts (Suffolk).

Respectfully submitted,

COMMONWEALTH CARE ALLIANCE,
HEALTH CARE FOR ALL, GLENN
CRENSHAW, PAULA CRENSHAW,
By their attorneys,

_____
Thomas M. Sobol (BBO #471770)
Wanda L. Garcia (BBO #658066)
HAGENS BERMAN SOBOL SHAPIRO, LLP
One Main Street, 4th Floor
Cambridge, MA 02142
(617) 482-3700

Steve Berman
HAGENS BERMAN SOBOL SHAPIRO, LLP
1301 Fifth Avenue, Suit 2900
Seattle, WA 98101
(206) 623-7292

Dated: March 18, 2005

### CERTIFICATION OF COMPLIANCE WITH LOCAL RULE 7.1(A)(2)

I, Thomas M. Sobol, counsel for Plaintiffs, hereby certify that before filing this Plaintiffs' Motion to Remand, I complied with the provisions of Local Rule 7.1(A)(2) by conferring with opposing counsel, Joshua S. Levy, and attempted in good faith to resolve or narrow the issues presented in this Motion.

_____
Thomas M. Sobol

## CERTIFICATE OF SERVICE

I, Thomas M. Sobol, hereby certify that on March 18, 2005, I served a copy of the foregoing pleading on counsel to all parties to this proceeding by placing a copy of the same in the United States mail, properly addressed and first class postage prepaid.

Harvey J. Wolkoff
Joshua S. Levy
Peter L. Welsh
ROPES & GRAY
One International Place
Boston, MA 02110-2624
(617) 951-7000

_____
Thomas M. Sobol